UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| PHILLIP SCHLICHER, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>CBE COMPANIES, INC.,<br><br>Defendant. | Case No.: 24-1035<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

COMES NOW Plaintiff, Phillip Schlicher by and through his undersigned attorneys, and hereby brings this Collective and Class Action Complaint against Defendant, CBE Companies, Inc., and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought by Plaintiff on behalf of himself and all similarly situated current and/or former Customer Service Representative, Customer Service Representative – Fraud, First Party Collections Representative, Collections Associate, and/or other job titles performing the same or similar job duties (collectively "Call Center Representatives" or "CCRs") employees of Defendant to recover for Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and alleged contractual obligations (or unjust enrichment if no contract is found), and other appropriate rules, regulations, statutes, and ordinances.

2. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like the one held by Plaintiff, are homogenous and issued guidance to alert and condemn an employer's non-payment of an employee's necessary boot-up and call ready activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit A at 2 ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to

download work instructions, computer applications and work-related emails.") Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

3. Defendant subjected Plaintiff, and those similarly situated, to Defendant's policy and practice of failing to compensate its call center employees for their necessary boot-up and call ready work, which resulted in the failure to properly compensate them as required under applicable federal law.

4. Plaintiff seeks a declaration that his rights, the rights of the FLSA Collective, and the rights of the Breach of Contract Class were violated and seeks to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which he and the putative Collective and Class may be entitled.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq*.

6. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

8. Upon information and belief, Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

9. Defendant's employees, including Plaintiff, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

10. This Court has personal jurisdiction over Defendant because it is a resident of Iowa and maintains offices in the state.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and is subject to the Court's personal jurisdiction in this District.

## PARTIES

12. Plaintiff is an individual who resides in the County of Montgomery, City of Clarksville, Tennessee. Plaintiff worked for Defendant as a Customer Service Representative and later a Fraud Team Leader from March 2022 to March 2024. Plaintiff executed his Consent to Sue form, attached hereto as Exhibit B.

13. Defendant is an Iowa corporation with its principal place of business in Iowa.

14. Defendant employs Customer Service Representative, Customer Service Representative – Fraud, First Party Collections Representative, Collections Associate, and/or other job titles performing the same or similar job duties nationwide. *See* Job Postings, attached hereto as Exhibit C.

15. Defendant provides accounts receivable management services and contact center solutions.

16. Defendant may accept service via its registered agent Nicholas C. Michael at 1309 Technology Parkway, Cedar Falls, Iowa 50613.

## **GENERAL ALLEGATIONS**

17. Defendant employed Plaintiff as an hourly Customer Service Representative and Fraud Team Leader. Defendant assigns CCRs, like Plaintiff, to receive inbound and make outbound calls on behalf of Defendant's clients.

18. Plaintiff's primary job duties as a Customer Service Representative included answering calls from wireless phone customers with local number portability issues, like seeking to change phone service providers while retaining the same phone number.

19. Plaintiff's primary job duties as a Fraud Team Leader included answering calls from wireless phone customers experiencing fraud issues and helping to resolve the issues.

20. Throughout Plaintiff's employment with Defendant, Plaintiff regularly worked at least 40 hours per workweek.

21. Regardless of whether Defendant scheduled Plaintiff to work a workweek totaling under 40 hours, a workweek totaling 40 hours, or a workweek totaling in excess of 40 hours, Plaintiff regularly worked a substantial amount of time off-the-clock as part of his job duties as a CCR. Defendant never compensated Plaintiff for this necessary time worked off-the-clock.

22. 29 C.F.R. § 790.8 states "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

### A. *Unpaid Boot-Up and Call Ready Work.*

23. Defendant tasked Plaintiff with providing customer service to Defendant's clients by use of Defendant's telephones and Defendant's computer programs.

4

24. To access Defendant's systems, Plaintiff, and all other current and/or former CCRs, must turn on or wake up their computers, enter their credentials, and then log in to multiple computer programs, servers, and applications. Once this boot-up and call ready work is completed, Plaintiff, and all other current and/or former CCRs, must log in to Defendant's phone system to take their first call at their scheduled shift start time.

25. Defendant does not compensate Plaintiff, and all other current and/or former CCRs, until they have clocked into the timekeeping program only accessible on Defendant's computer.

26. The boot-up and call ready work regularly takes up to 10 minutes per shift, or more if technical issues arise. Defendant did not compensate Plaintiff for this time.

27. Regardless of how long the boot-up and call ready work takes, Defendant did not allow Plaintiff, and all other current and/or former CCRs, to clock in before completing all the boot-up and call ready work.

28. The boot-up and call ready work Plaintiff, and all other current and/or former CCRs, must complete before they begin being compensated is the same regardless of where they worked.

29. The boot-up and call ready procedure is integral and indispensable to the performance of Plaintiff's principal job duties and integral and indispensable to Defendant's business.

30. Thus, the unpaid boot-up and call ready work performed by Plaintiff, and all other current and/or former CCRs, directly benefits Defendant.

**B.** ***Defendant's Policy and Practice of Off-the-Clock Work Violates Federal Law.***

31. At all times relevant, Defendant suffered or permitted Plaintiff, and all other current and/or former CCRs, to routinely perform off-the-clock boot-up and call ready work by not compensating its employees until after they completed the boot-up and call ready procedure.

5

32. Defendant knew or should have known that it must pay its employees for all compensable time throughout the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a).

33. Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former CCRs, for their compensable boot-up and call ready work performed in any amount.

34. Defendant knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires Defendant to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable boot-up and call ready work performed.

35. Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former CCRs, for their boot-up and call ready work performed in excess of 40 hours in a workweek at one and one-half times their regular rates of pay.

36. For example, upon information and belief, during the workweek of January 14, 2024 to January 20, 2024, Defendant paid Plaintiff for 40 hours of work. However, the hours Defendant paid Plaintiff did not include the boot-up and call ready work as alleged herein. Had Defendant properly paid Plaintiff for all hours worked during this pay period, then it would have paid him additional overtime wages equal to the uncompensated boot-up and call ready work.

37. Defendant is aware of each and every workweek Plaintiff was scheduled and worked for more than 40 hours because Defendant's own payroll records reflect the number of hours it paid Plaintiff.

38. Defendant is aware of Plaintiff's regular hourly rate for each and every workweek Plaintiff worked because Defendant's own payroll records reflect the hourly rate it paid Plaintiff. For example, Plaintiff's hourly rate for the exemplar week noted above was approximately $16.25 per hour.

39. Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former hourly CCRs working in Defendant's call center for their compensable boot-up and call ready work performed in workweeks totaling less than 40 hours and in workweeks totaling in excess of 40 hours at the proper rates, including overtime premiums.

40. In reckless disregard of the FLSA, Defendant adopted and then adhered to its policy, plan, or practice of employing Plaintiff, and all other current and/or former CCRs, to perform compensable boot-up and call ready work off-the-clock. This illegal policy, plan, or practice caused incorrect payments for all straight time and overtime performed by Plaintiff, and all other current and/or former CCRs, in violation of the FLSA and the parties' contract.

C. *Recordkeeping.*

41. 29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

42. Federal regulations mandate each employer to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

43. Upon information and belief, Defendant failed to establish, maintain, and preserve accurate timesheet and payroll records for all hours worked by Plaintiff as required by the FLSA because it failed to include the off-the-clock boot-up and call ready work on Plaintiff's and all other current and/or former CCRs' payroll records.

44. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) controls. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he

7

was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

45. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## COLLECTIVE ACTION ALLEGATIONS

46. Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) individually and on behalf of:

> *All current and former Customer Service Representative, Customer Service Representative – Fraud, First Party Collections Representative, Collections Associate, and/or other job titles performing the same or similar job duties (collectively "Call Center Representatives" or "CCRs"), who worked for CBE Companies, Inc., at any time in the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.[1]

47. Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

48. *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard:* With respect to the claims set forth in this action, a collective action under the FLSA is appropriate

---

[1] Plaintiff specifically reserves the right to amend the definition and/or include subclasses related to whether an employee worked in a physical call center, remotely, or in a hybrid environment.

8

because, under 29 U.S.C. § 216(b), the call center employees described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan (namely, Defendant's practices, policies, or plan of not paying its CCR employees for their compensable work performed in excess of 40 hours per workweek at an overtime premium of at least one and one-half times their regular rates of pay); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

49. Upon information and belief, Plaintiff estimates the FLSA Collective, including both current and former call center employees over the relevant period, will include several hundred members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of the FLSA Collective members should be readily available from a review of Defendant's personnel, scheduling, time, and payroll records; and from input received from the FLSA Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

50. Plaintiff shares the same interests as the FLSA Collective members in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, and the factual assessment and legal standards lend themselves to a collective action.

## BREACH OF CONTRACT CLASS ACTION ALLEGATIONS[2]

51. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative Class defined to include:

> *All current and former Customer Service Representative, Customer Service Representative – Fraud, First Party Collections Representative, Collections Associate, and/or other job titles performing the same or similar job duties (collectively "Call Center Representatives" or "CCRs"), who worked for CBE Companies, Inc., at any time in the last six years.*

(hereinafter referred to as the "Breach of Contract Class" or "Class"). Plaintiff reserves the right to amend this definition as necessary.[3]

52. *Numerosity:* The members of the Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The precise number of members of the Class should be readily available from a review of Defendant's personnel and payroll records.

53. *Commonality/Predominance*: There is a well-defined community of interest among members of the Class and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

   a. Whether Defendant offered to pay Plaintiff and the Class certain rates (depending on the technical job titles) per hour for each hour worked as call center workers;

   b. Whether Plaintiff and the Class accepted Defendant's offer by performing the essential functions of the job;

---

[2] To the extent the Court finds, or Defendant argues, the relationship between itself and its CCRs did not form a contract, Plaintiff reserves the right to seek Rule 23 class certification under Plaintiff's and the Class' quasi-contract claims (Count III).

[3] Plaintiff specifically reserves the right to amend the definition and/or include subclasses related to whether an employee worked in a physical call center, remotely, or in a hybrid environment.

  c.  Whether Defendant breached the contract by failing to pay Plaintiff and the Class for each and every hour worked; and

  d.  Whether Plaintiff and the Class were damaged.

54. *Typicality*: Plaintiff's claims are typical of those of the Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other Class members: whether Plaintiff and the Class worked under an implied contract to be paid for each and every hour worked by Defendant.

55. *Adequacy*: Plaintiff will fully and adequately protect the interests of the Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour collective and class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Class.

56. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for members of the Class to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual. Given the material similarity of the Class members' claims, even if each member of the Class could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds or thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Class claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

57. The case will be manageable as a class action. Plaintiff and his counsel know of no unusual difficulties in the case and Defendant's payroll systems will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT,
### U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES
### (FLSA Collective)

58. Plaintiff individually and on behalf of the proposed FLSA Collective, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

59. At all times relevant to this action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

60. Defendant is engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

61. At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

62. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

63. The positions of Customer Service Representative, Customer Service Representative – Fraud, First Party Collections Representative, and Collections Associate are not exempt from the FLSA.

64. Defendant's other job titles performing similar call center job duties are not exempt from the FLSA.

65. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff to work and thus "employed" him within the meaning of the FLSA, 29 U.S.C. § 203(g).

66. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207.

67. Defendant violated the FLSA by failing to pay Plaintiff the federally mandated overtime premium for all hours worked in excess of 40 hours per workweek.

68. Upon information and belief, Defendant has corporate policies of evading overtime pay for its hourly workers.

69. Defendant's violations of the FLSA were knowing and willful.

70. By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated Call Center Representatives, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to Call Center Representatives, or

13

other job titles performing the same or similar job duties, who have worked or are working for Defendant in the same or similar position as Plaintiff.

71. None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the Collective.

72. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II

### BREACH OF CONTRACT
### (Breach of Contract Class)

73. Plaintiff, individually and on behalf of the proposed Breach of Contract Class, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

74. Plaintiff and the Breach of Contract Class were hired at various times. Defendant offered to pay Plaintiff and the Class certain rates per hour for each hour worked as a CCR. Each Class members' contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

75. Plaintiff and the Class accepted the offer and worked for Defendant as CCRs, and/or other job titles performing the same or similar job duties.

76. Plaintiff and the Class also accepted the offer by their performance—i.e., reporting for work and completing the tasks assigned to them.

77. Plaintiff's duties, and the duties of Class members, required boot-up and call ready work.

78. Plaintiff and every other member of the Class performed under their contract by doing their jobs in addition to carrying out the off-the-clock duties Defendant required.

14

79. Upon information and belief, Defendant does not compensate its CCRs, and/or other job titles performing the same or similar job duties, for all boot-up and call ready work.

80. Despite being required to complete these integral boot-up and call ready duties, Plaintiff and the Class were not compensated at their hourly rate for their work performed.

81. By failing to pay Plaintiff and the Class for the boot-up and call ready work, Defendant breached its contract with Plaintiff and the Class to pay their hourly rate for each hour worked.

82. Defendant breached its duty to keep accurate records and to keep track of the time Plaintiff and the Class spent performing boot-up and call ready work, which is a fundamental part of an employer's job.

83. In sum, the facts set forth above establish the following elements and terms of the contract:

84. *Offer*: a set hourly rate for each hour worked as a CCR;

85. *Acceptance*: Plaintiff and the Class accepted the offer overtly or via performance (i.e., each showed up to work and completed the tasks assigned to them by Defendant)

86. *Breach*: Defendant did not pay Plaintiff and the Class for each hour (or part thereof) worked; and

87. *Damages*: By failing to pay Plaintiff and the Class their hourly rate for each hour worked, Defendant damaged Plaintiff and the Class in an amount to be determined at trial.

88. As a direct and proximate cause of Defendant's breach, Plaintiff and the Class were damaged in an amount to be proven at trial.

## COUNT III

**UNJUST ENRICHMENT**
**(Unjust Enrichment Class)**

89. Plaintiff individually and on behalf of the proposed Unjust Enrichment Class, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

90. Upon information and belief, Plaintiff's, and every other Class member's boot-up and call ready work—which is integral and indispensable to their principal activities as a CCR—provided valuable work and income for Defendant; namely, compensation to Defendant for completing customer service activities that directly benefited Defendant.

91. Plaintiff and the Class were unable to perform any job function without turning on or waking up their computer, logging in to the desktop, and opening the required programs. In short, to start their work of fielding customer calls precisely at their designated start time, Plaintiff and the Class worked off-the-clock before their shift began. Without the boot-up and call ready work, Plaintiff and the Class were unable to take customer calls at their designated start time. Further, upon information and belief, Defendant does not compensate its CCRs for all boot-up and call ready work.

92. As part of their ongoing relationship with Defendant, Plaintiff and the Class expected to be paid wages for the time they spent doing their jobs, including performance of the necessary boot-up and call ready work performed each shift.

93. By not paying Plaintiff and the Class for the time they spent performing necessary boot-up and call ready work, Defendant was, and continues to be, unjustly enriched at the expense of Plaintiff and the Class in an amount to be determined at trial.

94. By not paying Plaintiff and the Class for the time they spent performing necessary boot-up and call ready work, Defendant also saved, and continues to save itself, hundreds-of-thousands of dollars in unpaid payroll taxes—taxes that would have otherwise been credited to Plaintiff and the Class members' benefit.

95. It would be unjust and inequitable to allow Defendant to retain the benefit of the work performed by Plaintiff and the Class without compensation.

96. As a direct and proximate cause of Defendant's unjust enrichment, Plaintiff and the Class were harmed in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a. An Order authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth above;

b. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective and class members of their rights under this litigation;

c. An Order certifying the Breach of Contract Class (or in the alternative, the Unjust Enrichment Class) pursuant to Fed. R. Civ. P. 23;

d. An Order designating Plaintiff to act as the Class Representative on behalf of the FLSA Collective and the Breach of Contract Class (or in the alternative, the Unjust Enrichment Class);

e. An Order declaring that Defendant willfully violated the FLSA and its attendant regulations as set forth above;

f. An Order declaring that Defendant violated its obligations under the FLSA;

g. An Order declaring that Defendant breached its contract with Plaintiff and the Breach of Contract Class (or in the alternative, was unjustly enriched at the expense of Plaintiff and the Unjust Enrichment Class);

h. An Order granting judgment in favor of Plaintiff and the FLSA Collective against Defendant and awarding the amount of unpaid minimum wages, and overtime pay calculated at the rate of one and one-half (1.5) of Plaintiff's and the Collective's regular rate multiplied by all hours that Plaintiff and the Collective worked in excess of 40 hours per week;

i. An Order granting judgment in favor of Plaintiff and the Breach of Contract Class and against Defendant and awarding the amount of unpaid straight-time wages calculated at Plaintiff's and the Class' regular rate of pay;

j. An Order awarding liquidated damages to Plaintiff and the FLSA Collective in an amount equal to the amount of unpaid overtime wages found owing to Plaintiff and the Collective under the FLSA;

k. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action;

l. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

m. An Order awarding such further relief as this court deems appropriate.

## JURY DEMAND

NOW COMES Plaintiff, by and through his undersigned attorneys, and hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: October 2, 2024                                Respectfully submitted,

*s/ Leonard Bates*
Leonard Bates AT0010869
lbates@newkirklaw.com
NEWKIRK ZWAGERMAN, P.L.C.
3900 Ingersoll Ave, Suite 201
Des Moines, IA 50312
Telephone: 515-883-2000
Fax: 515-883-2000

*Local Counsel for Plaintiff*

Jacob R. Rusch (MN Bar No. 0391892)*
Zackary S. Kaylor (MN Bar No. 0400854)*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
T: 612-436-1800
F: 612-436-1801
E: jrusch@johnsonbecker.com

18

E: zkaylor@johnsonbecker.com

*Lead Attorneys for Plaintiff*

*\*Pro Hac Vice forthcoming*